■ In the Matter of UNITED WATER NEW ROCHELLE, INC., Appellant, v JAMES R. KING, Respondent. [795 NYS2d 692]—

In a proceeding pursuant to CPLR article 78 to review a determination of the respondent, James R. King, Building Inspector of the Town of Eastchester, dated July 14, 2004, that the petitioner's site plan approval and zoning variance had expired

by operation of provisions of the Town of Eastchester Zoning Law before the petitioner's submission of its building permit application or, in the alternative, to compel the respondent to process and grant the petitioner's building permit application, the petitioner appeals from a judgment of the Supreme Court, Westchester County (Nicolai, J.), entered January 24, 2005, which denied the petition and dismissed the proceeding.

Ordered that the judgment is modified, on the law, by deleting the provision thereof denying the petition and substituting therefor a provision granting the petition to the extent of annulling the determination and remitting the matter to the Building Inspector of the Town of Eastchester for a new determination on the merits of the petitioner's application for a building permit; as so modified, the judgment is affirmed; and it is further,

Ordered that the use variance and site plan approval previously granted to the petitioner shall remain in effect notwithstanding the provisions of Zoning Law of the Town of Eastchester § 10 (I) and § 11 (I) while the building permit application is pending; and it is further,

Ordered that one bill of costs is awarded to the petitioner.

The petitioner, a public utility, supplies drinking water to approximately 137,000 Westchester County residents and businesses in 13 communities, including the Town of Eastchester. The water supplied by the petitioner comes from either New York City's Catskill Aqueduct or the Croton Aqueduct.

The petitioner alleged that approximately 15 years ago it was ordered by the New York State Department of Health to either filter the water from the Croton Aqueduct or find an alternative source of supply. After evaluating various alternatives, the petitioner proposed to connect to New York City's Delaware Aqueduct, build a new transmission main to deliver the water to the petitioner's existing distribution system, and construct a new water treatment and pump station (hereinafter the Delaware Pump Station) to be located within the Town of Eastchester.

In 1994 the petitioner applied to the Town for site plan approval for the Delaware Pump Station and, at the Town's request, in 1995, also applied for a use variance. In November 1995 the Town Planning Board (hereinafter the Planning Board) issued a "negative declaration" that the Delaware Pump Station would have no significant adverse impact on the environment. In April 1996, however, the Town Zoning Board of Appeals denied the petitioner's application for a use variance. In an ensuing proceeding pursuant to CPLR article 78, this

Court ultimately annulled that determination and granted the requested variance, finding that the petitioner established that the Delaware Pump Station "is necessary to provide safe and adequate service to its customers and that there are compelling economic reasons for the variance," and that "the impact on the community would be minimal" (*Matter of United Water New Rochelle v Zoning Bd. of Appeals of Town of Eastchester*, 254 AD2d 490, 491 [1998]).

In November 1999, more than five years after the petitioner's site plan application was filed, the Planning Board held a public hearing to consider it. However, the Planning Board did not act on the application. Instead, some 18 months after the public hearing was held, it rescinded its 1995 negative declaration and required a full environmental impact statement before rendering a determination on the petitioner's site plan application. The petitioner then commenced a declaratory judgment action, which resulted in an order and judgment (one paper) of the Supreme Court, Westchester County (Nicolai, J.), dated December 2, 2002, declaring that the site plan application was approved by operation of the Town's Zoning Law. The petitioner also commenced a related proceeding pursuant to CPLR article 78, resulting in a judgment of the same court also dated December 2, 2002, granting the petition and annulling the Planning Board's determination rescinding the 1995 negative declaration. The order and judgment entered in the declaratory judgment action contained the following decretal paragraph: "Adjudged, that the time in which [the petitioner] must obtain a building permit and accomplish substantial construction pursuant to the site plan approval hereby granted shall commence upon entry of this Order and Judgment, except that, in the event of an appeal, the time periods shall commence upon entry of an order finally disposing of such appeal."

On December 15, 2003, this Court affirmed both the order and judgment and the judgment (*see United Water New Rochelle v Planning Bd. of Town of Eastchester*, 2 AD3d 627 [2003]). The Town's motion for leave to appeal to the Court of Appeals was subsequently denied on March 30, 2004 [2 NY3d 703]. Soon thereafter, at a meeting of the Town Board held on April 7, 2004, the Town reaffirmed its "commitment to pursue every avenue in preventing the building of the [Delaware Pump Station]."

In the interim, the petitioner retained an engineering consulting firm, CDM, to complete the project design and building permit application for the Delaware Pump Station. Beginning on or about April 8, 2004, and at various times throughout

April, May, and June of 2004, CDM attempted, to no avail, to schedule a pre-submission meeting with the Town's Building Department. Town personnel allegedly failed to return many of CDM's telephone calls, would not agree to set a specific time and place for a meeting, and claimed they needed more time to review project files before discussing the building permit.

Significantly, the Town's Building Inspector, the respondent, James R. King, readily conceded in his affidavit that he "did not really have the time" to meet with the petitioner and that, "knowing that the Application would be massive and very technical, I asked for additional time to get up to speed on the Project file before [the petitioner] submitted its Application." King met with CDM for the first and last time on July 8, 2004. At that meeting, King stated, among other things, that "due to the complexity of the Application" he "would need to retain outside professional engineering consultants to assist in the review of the Application, which could take several weeks from the submission date."

Nevertheless, *immediately after that meeting*, King allegedly consulted the Town Attorney's Office and was informed that the petitioner's time for obtaining the building permit had expired pursuant to Zoning Law of the Town of Eastchester § 11 (I), which provided, in relevant part, that a site plan approval "shall automatically expire if substantial construction is not accomplished within one year of approval, or a building permit has not been obtained within six (6) months from the date of the site plan approval." King was also advised of a similar automatic expiration provision pertaining to variances (*see* Zoning Law of Town of Eastchester § 10 [I]). Thereafter, in an undated letter reportedly sent on July 14, 2004, and received by the petitioner on July 16, 2004, King wrote that he was without authority to entertain or grant the petitioner's application for a building permit because he determined that the petitioner's site plan approval and use variance had expired.

Notwithstanding King's letter, the petitioner submitted an 1,100 page building permit application package on July 29, 2004. After initially accepting and date-stamping the package, King consulted with the Town Attorney's Office and thereafter advised CDM that he was returning the application without considering it. The instant proceeding pursuant to CPLR article 78 ensued.

On this record, the Supreme Court erred in denying the petition and dismissing the proceeding. The order and judgment of the Supreme Court dated December 2, 2002, provided that the six-month period within which the petitioner was required to

*obtain* a building permit (*see* Zoning Law of Town of Eastchester § 11 [1]) would, in the event of an appeal, "commence upon entry of an order finally disposing of such appeal." Notably, the Supreme Court did not further define such an order as, for example, by reference to CPLR 5611.

Following this Court's affirmance of the order and judgment, the Town moved for leave to appeal to the Court of Appeals but did not seek a stay. In light of the Town's continuing and steadfast opposition to the Delaware Pump Station, it is inconceivable that it would have considered, much less acted upon, the petitioner's application until the motion for leave to appeal was resolved. Indeed, the petitioner's attorney who drafted the order and judgment at the direction of the Supreme Court averred that the provision in issue was specifically "intended to protect [the petitioner] against expiration of its site plan approval while the Planning Board's likely appeal worked its way through the appellate courts." Moreover, after the denial of the Town's application for leave to appeal to the Court of Appeals, King admittedly "asked [the petitioner] for additional time to get up to speed on the [Delaware Pump Station] before [the petitioner] submitted its Application," and, over a three-month period, repeatedly declined to meet with the petitioner's consulting firm regarding the forthcoming application. The Town may be estopped from asserting that the application was untimely filed "when its improper conduct induced reliance by a party who changed [its] position to [its] detriment or prejudice" (*Rogozinski v Petronio*, 284 AD2d 992, 993 [2001], quoting *Conquest Cleaning Corp. v New York City School Constr. Auth.*, 279 AD2d 546, 546-547 [2001]; *see Bender v New York City Health & Hosps. Corp.*, 38 NY2d 662, 668 [1976]).

In light of the language of the order and judgment and its obvious intent, and having specifically asked the petitioner to delay filing the building permit application, the respondent can not now be heard to claim that the application was untimely. S. Miller, J.P., Krausman, Fisher and Lifson, JJ., concur.